**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| **WENDY LOMMEL,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 15-2006** |
| v. | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |
| | ************ | |

**MEMORANDUM OPINION GRANTING PLAINTIFF'S
<u>ALTERNATIVE MOTION FOR REMAND</u>**

Plaintiff Wendy Lommel seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 12) and Defendant's Motion for Summary Judgment (ECF No. 17).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 12) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1957, has one year of college education, and previously worked as an inventory control clerk, boat repairer, and software engineer.  R. at 23, 164.  Plaintiff protectively filed an application for SSI on September 20, 2012, alleging disability beginning on August 1, 2010, due to bipolar disorder, anxiety/panic attacks, suicidal thoughts, post-traumatic stress disorder, and agoraphobia.  R. at 132-39, 150, 163.  The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 51-92, 96-101, 104-16.  On October 9, 2014, ALJ O. Price Dodson held a hearing at which Plaintiff *pro se* and a vocational expert ("VE") testified.  R. at 28-49.  On December 10, 2014, the ALJ issued a decision finding Plaintiff not disabled since the application date of September 20, 2012.  R. at 13-27.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on May 6, 2015.  R. at 1-6, 11-12, 228-29.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. § 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On July 8, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

II

**Summary of Evidence**

A.     **State Agency Medical Consultants**

On December 11, 2012, a state agency consultant, Pauline Hightower, Psy.D., using the psychiatric review technique ("PRT") under 20 C.F.R. § 416.920a, evaluated Plaintiff's mental impairments under Listings 12.04 and 12.06 relating to affective disorders and anxiety-related disorders (R. at 54-55). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06. Dr. Hightower opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) mild difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation of extended duration. R. at 54. Dr. Hightower did not find evidence to establish the presence of the criteria under paragraph C of the applicable listings. R. at 55. Dr. Hightower thus assessed Plaintiff's mental residual functional capacity ("RFC") (R. at 56-57) and opined that she was moderately limited in her ability to (1) interact appropriately with the general public; (2) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and to (3) respond appropriately to changes in the work setting. R. at 56-57. Plaintiff otherwise was not significantly limited. R. at 56-57.

On June 11, 2013, another state agency consultant, D. Walcutt, Ph.D., again used the PRT to evaluate Plaintiff's mental impairments under Listings 12.04, 12.06, and 12.09 relating to affective disorders, anxiety-related disorders, and substance addiction disorders (R. at 65-66, 75-76, 87-88). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06, 12.09. Dr. Walcutt opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in

maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration. R. at 65, 75-76, 87. Dr. Walcutt did not find evidence to establish the presence of the criteria under paragraph C of the applicable listings. R. at 65, 76, 87. Dr. Walcutt thus assessed Plaintiff's mental RFC (R. at 67-69, 77-79, 88-90) and opined that she was moderately limited in her ability to (1) maintain attention and concentration for extended periods; (2) work in coordination with or in proximity to others without being distracted by them; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) interact appropriately with the general public; (5) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and to (6) respond appropriately to changes in the work setting. R. at 67-68, 77-78, 89-90. Plaintiff otherwise was not significantly limited. R. at 67-68, 77-79, 89-90.

**B.     Hearing Testimony**

    **1.     Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in the ALJ's decision:

> [Plaintiff] alleges she is unable to work because of depressive disorders manifested by suicidal thoughts, mood instability, sleep disturbance, low energy, and social withdrawal, and by anxiety-related disorders manifested by panic attacks, irrational fear, and agoraphobia. In her Function Reports, she noted that her mental impairments affect her abilities to remember, complete tasks, follow instructions, concentrate, and get along with others [R. at 162-77, 204-07].
>
> At the hearing, [Plaintiff] testified that she became depressed after she became involved in an abusive relationship. She and her partner then moved to Virginia and acquired an old wooden boat (cruiser), which they restored and began to live in. She testified that she still lives on the boat alone and does all the maintenance. [Plaintiff] stated that her biggest problem continues to be fear of everyone, except for three friends/family members with whom she feels comfortable. She testified that she is uncomfortable around strangers and

> therefore leaves the boat and marina very infrequently, for trips to the grocery store about 3 to 4 times a month. Otherwise, she stated, she has little motivation for activity and just desires to lie down. She further testified that her thoughts race and she is unable to focus, but she admitted that she watches television and on some days, finds meaningful things to do.

R. at 20; *see* R. at 33-45.

    2.    **VE Testimony**

The VE testified that a hypothetical individual with Plaintiff's same age, education, and work experience with the RFC to perform medium work with the non-exertional limitations outlined below in Part III could perform the unskilled, medium[2] jobs of hand packer, industrial cleaner, or laundry laborer. R. at 47. The VE's testimony regarding these jobs was consistent with the *Dictionary of Occupational Titles*.[3] R. at 47-48. A person "off task" more than 15% of the workday because of problems maintaining concentration and attention could not perform any work. R. at 47.

### III

### Summary of ALJ's Decision

On December 10, 2014, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the application date of September 20, 2012; and (2) had an impairment or a

---

[2] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.* § 416.967(c).

[3] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 416.966(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as a hand packager, industrial cleaner, or laundry laborer. R. at 18-24. The ALJ thus found that she was not disabled since the application date of September 20, 2012. R. at 24.

In so finding, the ALJ found that Plaintiff had the RFC "to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she is limited to routine[,] repetitive tasks; she must avoid direct interaction with the general public; and she can engage in occasional contact with co-workers or supervisors." R. at 20. The ALJ also considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. at 20-21. The ALJ found that, with regard to concentration, persistence, or pace,

> [Plaintiff] has moderate difficulties. [Plaintiff] alleges that she cannot understand, remember, complete tasks or concentrate well and that she consequently takes longer to complete activities. However, the mental health treatment records indicate that she would be capable of understanding, remembering, and carrying out at least simple directions and simple tasks, as mental status examinations reflect normal thought processes and thought content. In addition, [Plaintiff] remains independent in simple and complex daily activities, including but not limited to reading, preparing meals, shopping, traveling, and household maintenance [R. at 33-45, 170-85, 204-07, 230-377, 380-467, 469-576].

R. at 19.

IV

**Disability Determinations and Burden of Proof**

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

V

<u>**Substantial Evidence Standard**</u>

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[5] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 3-11,

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

ECF No. 12-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)). Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work. *Id.* at 6. In particular, she contends that, although the ALJ found that she had moderate difficulties with regard to concentration, persistence, or pace, the ALJ failed to include any limitation on concentration, persistence, or pace in the RFC assessment, instead limiting her to routine, repetitive tasks. *Id.* Plaintiff further asserts that the ALJ failed to evaluate pertinent evidence. *Id.* at 7-8. Plaintiff also maintains that the ALJ erroneously relied upon her GAF[6] ratings in determining that she was not disabled. *Id.* at 8-11. For the reasons discussed below, the Court remands this case for further proceedings.

> SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC
> 
> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given

---

[6] The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000). The current edition of the manual eliminated the GAF scale for reasons including "its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, __ F.3d __, No. 15-1098, 2016 WL 3349355, at *9-10 (4th Cir. June 16, 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

Plaintiff argues that, in assessing her RFC and in presenting hypothetical questions to the VE, the ALJ failed to consider adequately her moderate difficulties in maintaining concentration, persistence, or pace, contrary to *Mascio*. Pl.'s Mem. Supp. Mot. Summ. J. 6-7, ECF No. 12-1. In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step

three did not translate into a limitation in the claimant's RFC.  *Id.*  In other words, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary."  *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015).

"The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.'  A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'"  *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.  In addition to the five-step analysis discussed above in Part IV and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments.  20 C.F.R. §§ 404.1520a, 416.920a.  These regulations require application of a psychiatric review technique at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review.  20 C.F.R. §§ 404.1520a(a), 416.920a(a).  This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment."  *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1).  If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  *Id.* §§ 404.1520a(c)(3),

416.920a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). If so, then the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's RFC. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3).

"The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)). With regard to the four functional areas, which correspond to the paragraph B criteria of the listings for mental disorders, "[a]*ctivities of daily living* include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [the claimant's] grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1). "In the context of [the claimant's] overall situation, [the Commissioner assesses] the quality of these activities by their independence, appropriateness, effectiveness, and sustainability. [The Commissioner] will determine the extent to which [the claimant is] capable of initiating and participating in activities independent of supervision or direction." *Id.* Moreover, "[*s*]*ocial functioning* refers to [the claimant's] capacity to interact

independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." *Id.* § 12.00(C)(2). Further, "[*c*]*oncentration, persistence, or pace* refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). "On mental status examinations, concentration is assessed by tasks such as having [the claimant] subtract serial sevens or serial threes from 100. In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits." *Id.* Finally, "[*e*]*pisodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* § 12.00(C)(4). "Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id.* Episodes of decompensation may be inferred from "medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." *Id.* "The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.*

Here, the ALJ's hypothetical questions to the VE and the corresponding RFC assessment limiting Plaintiff to "routine, repetitive tasks" do not account for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. *See Mascio*, 780 F.3d at 638. Further, the ALJ's inclusion of a limitation in the assessment of Plaintiff's RFC and in the hypothetical questions to the VE to only occasional contact with co-workers or supervisors (R. at 20, 47) accounts for Plaintiff's moderate difficulties in social functioning (R. at 19) but does not account for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace (R. at 19). *See, e.g.*, *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (per curiam) (rejecting contention that "the ALJ accounted for [the claimant's] limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(2). *But see Hillard v. Colvin*, Civil Action No. ADC-15-1442, 2016 WL 3042954, at *6 (D. Md. May 26, 2016) ("The ALJ additionally accounted for Plaintiff's limitation in concentration and persistence by restricting him to work 'without frequent interaction with co-workers or the public.'"); *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) ("The ALJ accounted for Plaintiff's limitation in pace by restricting her to 'nonproduction pace,' and he accounted for her limitation in concentration and persistence by restricting her to a stable work environment with only occasional public contact."). "[T]he issue in this case is not whether the record contains evidence that might support the ALJ's conclusions; it is whether the ALJ explained the apparent discrepancy between [his] step three finding and [his] RFC assessment." *Talmo*, 2015 WL 2395108, at *3. Further, although Defendant contends that any *Mascio* error by the ALJ was harmless (Def.'s Mem. Supp. Mot. Summ. J. 8-9, ECF No. 17-1), "the Fourth Circuit has declined to find harmless error where an

error or omission precludes meaningful review." *Jeffries ex rel. J.J.J. v. Comm'r, Soc. Sec.*, No. JKB-15-1727, 2016 WL 3162800, at *2 (D. Md. June 7, 2016) (citing *Fox v. Colvin*, 632 F. App'x 750, 756 (4th Cir. 2015) (per curiam); *Mascio*, 780 F.3d at 636-37); *see Radford*, 734 F.3d at 296. In short, neither the ALJ's RFC assessment nor the ALJ's hypothetical questions to the VE address Plaintiff's ability to stay on task, and the Court is left to guess how the ALJ accounted for this ability despite finding that Plaintiff has moderate difficulties in maintaining concentration, persistence, or pace. Remand thus is appropriate, and the Court need not address Plaintiff's remaining arguments.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 17) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 12) is **GRANTED**. Defendant's final decision is **REVERSED IN PART** under the fourth sentence of 42 U.S.C. § 405(g). This matter is **REMANDED** for further proceedings consistent with this opinion. A separate order shall issue.

Date: August 18, 2016                              /s/
                                                   Thomas M. DiGirolamo
                                                   United States Magistrate Judge